# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| PHILIPS MEDICAL SYSTEMS NEDERLAND B.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS INDIA LTD., <br><br> Plaintiffs, <br><br> v. <br><br> TEC HOLDINGS, INC., F/K/A TRANSTATE EQUIPMENT COMPANY, INC., TRANSTATE EQUIPMENT COMPANY, INC., F/K/A TRANSTATE HOLDINGS, INC.; and ROBERT A. ("ANDY") WHEELER, individually and in his capacity as executor and personal representative of the Estate of DANIEL WHEELER, <br><br> Defendants. | Civil Action No. <br><br> 1:17-cv-02864-JPB |

## THE WHEELER DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## Introduction

Almost two years into litigation and in the face of repeated dismissals of its claims, plaintiffs Philips Medical Systems Nederland B.V., Philips North America LLC, and Philips India Ltd. (collectively, "Plaintiffs" or "Philips") have filed *another* amended complaint, this time circumventing the Court's prior rulings by re-asserting dismissed claims, and greatly expanding the scope of the litigation with new claims and parties in their quest to suppress competition in the federally-regulated downstream market for medical imaging system maintenance and support services.

For the first time, Plaintiffs allege twelve counts against two new defendants that are/were company officers—Robert Wheeler ("Andy Wheeler"), individually and on behalf of the Estate of his deceased father Daniel Wheeler ("Daniel Wheeler") (collectively, "the Wheelers"). But even with the benefit of the Court's prior rulings and many months of discovery, Plaintiffs' claims are devoid of facts implicating the Wheelers personally and instead are based on unsupported conclusions or are irrelevant.

The Wheelers respectfully move for dismissal of the counts pled against them in the Second Amended Complaint, DE 139 ("Complaint"), because the allegations fail to plausibly state claims under the Computer Fraud and Abuse Act

("CFAA") (Counts III & IV), the Digital Millennium Copyright Act ("DMCA") (Counts VII & VIII), the Copyright Act (Count XV & XVI), the Defend Trade Secrets Act ("DTSA") and the Georgia Trade Secrets Act ("GTSA") (Counts X, XI, & XIII), and tortious interference with contractual relations (Counts XVIII & XIX). The Court should not allow these claims to proceed and should dismiss them.[1]

### Relevant Background

Philips first filed this case on July 28, 2017 against defendant TEC Holdings, Inc. ("TEC" or "Transtate I"), which had ceased doing business in the medical imaging system maintenance and support industry several months prior to the original complaint being filed, and later amended the complaint to add Transtate Equipment Company, Inc. ("Transtate" or "Transtate II"), which had acquired most of the assets of TEC earlier in 2017. DE 20. Against the Transtate defendants, Philips asserted claims related to medical imaging systems that Philips developed and sold to medical facilities. The medical facilities hire independent service organizations, like the Transtate defendants, to provide assembly, installation, adjustment, and testing ("AIAT") maintenance and support services using information that federal law requires be made available by original equipment

---

[1] This motion only addresses the counts against the Wheelers. The corporate defendants separately filed a motion to dismiss. *See* DE 164.

manufacturers, such as Philips. *See* 21 C.F.R. § 1020.30(g).

On March 14, 2018, the Court partially dismissed Plaintiffs' CFAA claims. DE 42 at 10-11. And on January 4, 2019 the Court dismissed the trade secret counts for being "precluded/preempted by the FDCA" because "they require this Court to make determinations about what constitutes AIAT materials—determinations more properly within the exclusive purview of the FDA." DE 92 at 24-25.

On May 20, 2019, the Court granted Plaintiffs leave to amend the complaint "to add Andy Wheeler and Daniel Wheeler"; "to allege new facts"; and "to assert additional claims." DE 135 at 20. And with respect to trade secrets claims, Plaintiffs were "granted leave to amend only to the extent that such [trade secret] claims are not premised upon [Proprietary Service Materials]" ("PSMs"). *Id.* Philips filed the Second Amended Complaint on May 23, 2019.

Fact discovery opened on April 27, 2018, and was set to close May 31, 2019 (DE 108), but was extended by Judge May for an unspecified time period during a May 15, 2019 teleconference (DE 138). Subsequently, per Judge May's instructions, the parties submitted proposals to the Court with their respective positions on the length of the needed additional discovery period related to the recent filing of the Second Amended Complaint.

So far in this case, Philips' discovery has been exhaustive. In addition to

extensive written discovery and document production,[2] Philips has deposed six Transtate service personnel and former President, Daniel Wheeler, while he was suffering from stage 4 terminal cancer. Daniel Wheeler died on March 23, 2019 shortly after his deposition. Philips also will be deposing current President, Andy Wheeler, in his personal and 30(b)(6) capacities for the Transtate defendants.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). A complaint should be dismissed when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Notice pleading under the Federal Rules of Civil Procedure, however, "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Dismissal is warranted where, as here, the Complaint does not "allege 'sufficient factual matter' to show

---

[2] The Transtate defendants and their employees have produced approximately 175,000 pages of documents and over 500 GBs of data. Philips also has served 44 interrogatories, 160 requests for production, and 932 requests for admission.

4

that a claim is facially plausible." 556 U.S. at 675. Indeed, even taking the factual allegations in the Complaint as true, the allegations fail "to raise a right to relief above a speculative level." *Twombly,* 550 U.S. at 555-56. The Complaint merely contains a set of labels and conclusions along with "a formulaic recitation of the elements of a cause of action" that do not satisfy pleading requirements. *Id.* at 555 (citations omitted). Instead, to be plausible on its face, the Complaint must include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570.

## ARGUMENT

## I. Plaintiffs Have Failed to State a Claim Under the CFAA

Philips alleges in Counts III and IV that the Wheelers are personally liable for the CFAA violations of the corporate defendants under §§ 1030(a)(2)(C), (a)(4), (a)(5)(A), (a)(5)(C), and (a)(6). The Court should dismiss these Counts because Philips fails to allege loss or damage, fails to plead at least one element of each identified claim, and premises its arguments on a theory of vicarious liability that is unavailable under the CFAA.

### a. Plaintiffs' Claims Under CFAA § 1030(a)(5) Fail

The Court already has dismissed Philips' claims under § 1030(a)(5)(A) and (a)(5)(C). DE 42 at 9-10 (ruling that Philips "cannot proceed on the theory that

Defendant . . . accessed a computer 'without authorization'").  Philips concedes the Court again should dismiss these claims.  DE 166 at 8.

### b.  Plaintiffs' Claims Under CFAA § 1030(a)(6) Fails

Philips' claim against the Wheelers under § 1030(a)(6) fails for three independent reasons.  *First*, the claim fails in view of the Court's prior ruling; a ruling Philips concedes is preclusive.  DE 166 at 8.  Because Philips does not allege that any defendant lacked authorization from customers to access the imaging systems at issue, defendants cannot have violated § 1030(a)(6) for trafficking devices used to access these systems *without authorization. See AtPac, Inc. v. Aptitude Sols., Inc.*, 730 F. Supp. 2d 1174, 1183 (E.D. Cal. 2010) (trafficking claim failed where plaintiff had not sufficiently alleged access "without authorization"). Philips' claim fails even if it contends § 1030(a)(6) prohibits trafficking in a password "through which a computer *may be accessed* without authorization" because the Complaint does not name a single recipient of any allegedly trafficked password who *was not authorized* by defendants' customers to access the customers' systems (sold by Philips), *i.e.,* each alleged recipient of a trafficked password had

6

authorization to access Plaintiff's computers.[3]

*Second*, the claim fails to allege trafficking of *passwords or similar information*. Philips alleges that because the alleged software exploit and log file downloader "are specifically meant to facilitate access to Philips Systems by circumventing access controls without authorization and . . . have no legally valid use," they constitute "passwords or similar information" under the CFAA. DE 139, ¶¶ 167, 70. Not only does this conclusion not logically follow, but it is undermined by Philips' admission that the alleged exploit mechanisms are designed to *circumvent access controls*. *Id.*, ¶¶ 165-70. That is, the exploit mechanisms allegedly trafficked by defendants are not passwords; they are alleged to be the opposite—technological measures designed to *circumvent* passwords and similar authentication features. *See AtPac*, 730 F. Supp. 2d at 1182-83 ("[T]rafficking in a password is the simple and . . . very common act of giving someone else your password."); *Tracfone*, 275 F. Supp. 3d at 1341 (holding PIN numbers to be computer passwords). Section 1030(a)(6) was not intended to address circumvention; it was enacted to create liability for hackers posting stolen

---

[3] Philips alleges that defendants provided copies of the software exploit and log file downloader "to others," DE 139, ¶¶ 171-72, but those "others" were the owners of the systems or employees authorized to access the systems, *id.*, ¶¶ 61-62.

passwords on electronic bulletin boards. *See* S. Rept. 99-432 at 13 (1986); H. Rept. 99-612 at 12-13 (1986).

*Third*, this claim should be dismissed because Philips has alleged only that *Transtate* engaged in trafficking, *not the Wheelers*. DE 139, ¶¶ 171-72. Philips alleges that the Wheelers are responsible for Transtate II's violations due to their participation in Transtate II's activities, but such allegations are insufficient to sustain a CFAA claim. *Id.*, ¶¶ 180, 189. Under the CFAA, the person who has suffered damage or loss by a violation may maintain a civil action against the "violator." 18 U.S.C. § 1030(g). The "violator" is the *specific person(s) who committed the violation*. *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1344 (N.D. Ga. 2017) ("[S]olutions II did not access Agilysys' computers, and therefore, Solutions II may not be held liable as the violator under the CFAA."); *see also Power Equip. Maint., Inc. v. AIRCO Power Servs., Inc.*, 953 F. Supp. 2d 1290, 1297 (S.D. Ga. 2013) (failure to state CFAA claim where there was no allegation that defendant accessed plaintiff's computers because the "CFAA requires that the individual actually access the information, not merely receive it from a third party"); *Doe v. Dartmouth-Hitchcock Med. Ctr.*, 2001 WL 873063, at *6 (D.N.H. July 19, 2001) (no vicarious liability under CFAA). The Wheelers cannot be liable under the CFAA for the alleged trafficking of Transtate II or its employees. *See Agilysys,* 258 F. Supp. 3d at

8

1343 (dismissing CFAA claims based on alleged "direction" or "inducement").

### c. Plaintiffs' Claims Under CFAA § 1030(a)(2)(C) and § 1030(a)(4) Fail

The *Agilysys* line of cases also supports dismissal of Philips' § 1030(a)(2)(C) and § 1030(a)(4) claims against the Wheelers. Under § 1030(a)(2)(C), liability attaches to a defendant who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." Similarly, under § 1030(a)(4), liability attaches to one who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud." Both of these statutory sections require *personal* access, but Philips has not alleged the Wheelers personally accessed any covered system.[4] Accordingly, the Court should dismiss Philips' claims under §§ 1030(a)(2)(C) and 1030(a)(4). *See Agilysys*, 258 F. Supp. at 1343-44.

Separately, § 1030(a)(4) provides an exemption from liability where "the thing obtained consists only of use of the computer and the value of such uses is not more than $5000 in any 1-year period." This exemption applies here. *First*, the

---

[4] DE 139, ¶¶ 96 (alleging access by a "technician from Transtate I" at the Lakewood Regional Medical Center), 113 (alleging access by a "Transtate I technician" at the Homes Regional Hospital), and 117-18 (alleging access by an unidentified individual acting on behalf of Transtate I at Piedmont Healthcare).

"thing obtained" consists only of use of the computers—*i.e.*, medical imaging systems—at issue to provide onsite servicing. *Second*, Philips has not alleged that the economic *value to defendants* of such uses exceeded $5000 in any 1-year period. Philips' allegations that they have spent over $5000 in *responding to defendants' alleged conduct* is a completely separate inquiry.[5] DE 139, ¶¶ 151, 161.

### d. Plaintiffs Have Failed to Allege CFAA "Loss" or "Damage"

The Court also should dismiss each of Philips' CFAA claims because they fail to allege the Wheelers caused the requisite "damage" or "loss" under the statute. To bring a civil claim under *any section* of the CFAA, plaintiff must allege that it has suffered damage or loss. 18 U.S.C. § 1030(g). "[D]amage" is "any impairment to the integrity or availability of data, a program, a system, or information," 18 U.S.C. § 1030(e)(8), and does not occur without alteration or deletion of data from a computer. *Andritz, Inc. v. Southern Maintenance Contractor, LLC*, 626 F. Supp. 2d 1264, 1266 (M.D. Ga. 2009), *vacated on other grounds, LLC*, 2009 WL 10674137 (M.D. Ga. 2009); *Volk v. Zeanah*, 2010 WL 318261, 3 (S.D. Ga. 2010) ("Without some allegation of alteration, impairment, or deletion, the mere copying

---

[5] *See AtPac*, 730 F. Supp. 2d at 1185 (holding that allegations of "loss" under § 1030(g) and "value of use" under § 1030(a)(4) are separate and distinct inquiries, and that pleading one is not a sufficient proxy for the other).

of data does not create a cognizable claim for damage under the CFAA.").  Because Philips has not alleged alteration or deletion of data, Philips has not alleged "damage" within the meaning of the CFAA.

The CFAA defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).  Philips makes no allegation *the Wheelers* caused any loss and the Court should dismiss the CFAA claims for this independent reason.

## II.    Plaintiffs Have Failed to State a Claim Under the DMCA

### a.  Plaintiffs' Claims Under DMCA § 1202(a) Fails

Philips has not alleged that the Wheelers provided false copyright management information, and therefore the Court should dismiss the § 1202(a) claims.  DE 139 (Counts VII and VIII).  To bring such a claim, Philips must allege the Wheelers, "knowingly and with intent to induce, enable, facilitate, or conceal infringement, provide[d] copyright management information that is false, or distribute[d] or import[ed] for distribution copyright management information that is false."  17 U.S.C. § 1202(a).  "Copyright management information" (CMI)

includes the title or other identifying information about the copyrighted work, the name of the author, the name of the copyright owner, the name of a performer of the work, the work's terms and conditions, etc. 17 U.S.C. § 1202(c). The Complaint contains no allegation that *anyone* provided *false* CMI.

### b. Plaintiffs' Claims Under DMCA § 1202(b) Fails

Philips' claims under § 1202(b) (Counts VII and VIII) also fail because the "electronic documents" from which defendants allegedly *removed* CMI do not fall within the scope of Philips' copyright registrations and, in any event, there are no allegations *the Wheelers* had reasonable grounds to know such documents were copyright protected (if they even are protected).

DMCA § 1202(b)(1) states that no person shall, without the copyright owner's authority, "intentionally remove or alter any copyright management information knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title." 17 U.S.C. § 1202(b)(1). Subsections (b)(2) and (b)(3) prohibit distribution and importation of removed or altered CMI and works containing such information, respectively.

The Complaint contains only one allegation of removal or alteration of CMI: the "decryption and stripping mechanism" allowed *Transtate* to "obtain encrypted

Philips electronic documents, decrypt those documents, and strip those documents of their metadata allowing Transtate to redistribute unauthorized unprotected copies of Philips electronic documents." DE 139, ¶ 81. Philips alleges that the metadata stripped from those documents includes CMI. *Id.*, ¶ 215.

Missing from Philips' allegations, however, is a description of the documents themselves, and crucially, an allegation they fall within the scope of the copyright registrations attached to the Complaint. Philips alleges only that the documents are "electronic documentation" in which Philips "owns the copyright." DE 139, ¶ 210. That is not enough. DMCA § 1202 requires that the Wheelers have reasonable grounds to know their actions would facilitate *copyright infringement.* 17 U.S.C. § 1202(b). An infringement claim requires registration covering the allegedly copyrighted material. *See Dowbenko v. Google, Inc.*, 582 F. App'x 801, 805 (11th Cir. 2004) (dismissing copyright claim for failure to comply with Copyright Act's registration requirement); *Foundation for Lost Boys & Girls of Sudan Inc. v. Alcon Entertainment, LLC*, 2016 WL 4394486, *7 (N.D. Ga. Mar. 22, 2016) (same); *Robbins v. Island Def Jam Music Group*, 2011 WL 2412744, *2 (S.D. Ga., June 9, 2011) ("[Plaintiff's] failure to register the work prior to suit, and his failure to even allege registration in his pleadings, is fatal to [plaintiff's] claim."); *Schenck v. Orosz*, 2013 WL 5963557, *10 (M.D. Tenn. 2013) (holding that "the DMCA does not displace

§ 411(a)'s registration requirement"). The Wheelers' alleged actions could not possibly have facilitated copyright infringement because the "electronic documents" do not fall within the scope of the registrations attached to the Complaint, which only cover computer software for the Allura machines. DE 139, Ex. A. The claims should be dismissed.

Furthermore, even if Philips alleged the electronic documents were within the registrations' scope, Philips still has not alleged facts sufficient to show the Wheelers *had reasonable grounds to know* a copyright protected the "electronic documents." The Complaint lacks even the most basic factual detail regarding the documents, including their content and whether they contain copyright notices putting the public on notice of Philips' alleged rights. *See Stevens v. Corelogic, Inc.,* 899 F.3d 666, 673-75 (9th Cir. 2018) (holding "the mental state requirement in Section 1202(b)" requires "more specific application than the universal possibility of encouraging infringement; specific allegations as to how identifiable infringements 'will' be affected are necessary"). The Court should dismiss this claims for this independent reason.

### c. Plaintiffs' DMCA § 1201 Claims Fail

The Court also should dismiss Philips' § 1201 claims based on materials outside the scope of the registrations attached to the Complaint. Section 1201

provides that "no person shall circumvent a technological measure that effectively controls access *to a work protected under this title*." 17 U.S.C. § 1201(a)(1)(A) (emphasis added). To bring a DMCA claim, the work must be registered. *See Schenck*, 2013 WL 5963557 at *10. Thus, Philips' § 1201 claims should be dismissed for encompassing works outside the registrations attached to the Complaint, or, at a minimum, should be limited to works within the registrations' scope.

## III.  Plaintiffs' Copyright Claims Beyond the Registrations Fail

For similar reasons, the Court should dismiss Philips' copyright claims that fail to meet the statutory registration requirement. *See supra* Section II.b-c. Aside from limited circumstances inapplicable here, Philips may only assert a claim for copyright infringement after a work has been registered with the Copyright Office. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019) (upholding 11th Circuit dismissal of copyright claim where no registration for the work had been issued by the Copyright Office). "[R]egistration is akin to an administrative exhaustion requirement that the owner *must* satisfy before suing. . . ." *Id.* (emphasis added). Therefore, allegations of copyright infringement that are not based on the registrations attached to the Complaint should be dismissed. *See, e.g., Izmo, Inc. v. Roadster, Inc.*, 2019 WL 2359228, at *2 (N.D. Cal. June 4, 2019) (dismissing copyright claims to the extent they were based on works that had not

15

been registered at the time of filing the complaint); *Dowbenko*, 582 F. App'x at 805; *Foundation,* 2016 WL 4394486 at *7; *Robbins*, 2011 WL 2412744 at *2.

Here, the Complaint includes seven copyright registrations, each for a different version of Philips' Allura software. DE 139, Exhibit A; *see also id,* ¶ 307 ("Philips has registered the copyright in the Philips' proprietary software for the Allura System."). Numerous allegations in the Complaint, however, discuss and describe broader categories of allegedly "proprietary software" and "Proprietary Service Materials" that have no apparent copyright registration. *Id.*, ¶¶ 326, 328, 332, 343-45, 348. Notably, in response to the corporate defendants' identical argument in their motion to dismiss, Philips does not deny that it does not have registrations covering its copyright claims. DE 166 at 11-13. Instead of being transparent, Philips has chosen to waste this Court's and the defendants' resources defending copyright claims that have no merit. Consequently, Philips' copyright claims should be dismissed for encompassing other allegedly copyrightable works than those in the registrations included in Exhibit A to the Complaint.

## IV. Plaintiffs' Claims Under the DTSA and GTSA Fail

The trade secret claims against the Wheelers (Counts X-XI (DTSA) & XIII (GTSA)) also fail because: (1) Philips' allegations against the Wheelers in their corporate capacity are insufficient; (2) Philips failed to identify the alleged trade

secrets; (3) Philips failed to identify the alleged misappropriation, and (4) Philips'
allegations encompass PSMs, over which the Court lacks jurisdiction.

### a.  Allegations Against the Wheelers in their Corporate Capacity Fail

Phillips' allegations against the Wheelers based on their corporate capacity
and irrelevant allegations of "concealment" fail to support a trade secret claim
against them.  Philips alleges the Wheelers in their capacity as "President" (Daniel)
or "Vice-President" (Andy) "directly participated in Transtate I and Transtate II's
behavior" in violation of the DTSA.  DE 139, ¶¶ 269, 281.  The Wheelers allegedly
"participated in Transtate's efforts to conceal its tortious behavior."  *Id.*, ¶¶ 270,
282.  Daniel Wheeler allegedly "instructed . . . employees to conceal the steps they
employed"; "not to talk" about Transtate's methods; and "not to allow" non-
Transtate personnel to "observe the steps . . . employees took."  *Id.*, ¶¶ 271-73.
Philips' trade secret allegations based on alleged ***concealment***—which are the *only*
specific allegations made against Daniel Wheeler—fail to state a claim because
allegations of "concealment" do not support a claim for *trade secret*
*misappropriation*.[6]  Nor do allegations the Wheelers are officers of the Transtate

---

[6] A trade secret claim requires plaintiff to plead and prove that (1) it had a trade
secret, and (2) the opposing party misappropriated it.  *E.g.*, *Capital Asset Research*
*Corp. v. Finnegan,* 160 F.3d 683, 685 (11th Cir. 1998).  A "trade secret" requires:  (i)
information not commonly known by or publically available, (ii) which derives

defendants suffice to state a claim against them personally. *See Smith v. Georgia Energy USA LLC,* 2014 WL 5643919, at *3 (S.D. Ga. Nov. 4, 2014) (recognizing potential liability *if* corporate officer "takes part in the commission of [the] tort").

### b. Plaintiffs Fail To Identify the Trade Secrets at Issue

The Court also should dismiss Philips' trade secret claims because the allegations fail to sufficiently identify the trade secret(s) allegedly misappropriated. *See, e.g., Purchasing Power, LLC v. Bluestem Brands, Inc.,* 22 F. Supp. 3d 1305, 1314 (N.D. Ga. 2014) (holding that plaintiff "following months of discovery . . . failed to identify the specific trade secrets it claims were misappropriated" and its "scattershot of general categories of 'trade secrets' is not enough"), *vacated on other grounds,* 2016 WL 9753961. At most, Andy Wheeler (not Daniel) is alleged to have "participated in the use of, and in at least one case (the software exploit) created Transtate's Exploit Mechanisms" and to have "personally made use of Philips' confidential documents from a Philips Former Employee to write the software exploit . . . to disable access controls on Philips Systems.[7] DE 139, ¶¶ 282-83. But alleging the "use" of unidentified "*confidential*

_____

economic value from not being generally known or ascertainable by proper means; and (ii) that was subject to reasonable efforts to maintain its secrecy. *Id.*

[7] The rest of the allegations are that Andy Wheeler "personally trained," "assisted," or "participated" in disabling or circumventing "Philips access

*information*" is not sufficient to state a plausible claim for *trade secret* misappropriation. *See Purchasing Power,* 22 F. Supp. 3d at 1314 ("[B]road information categories are not sufficient to meet Plaintiff's legal obligation to allege and prove it has a trade secret."). Indeed, it is impossible to evaluate whether the alleged information is known, publicly available, or reasonably ascertainable; whether it was subject to reasonable efforts to maintain its secrecy; and whether it derives economic value from not being generally known—all of which is required for trade secret protection. *See id.* ("A plaintiff also must allege and show [the trade secret factors].").[8]

In sum, Philips' allegations "lack[] boundaries to permit [the Wheelers] to ascertain where the trade secrets might lie" and should be dismissed. *Lamont v. Conner,* 2019 WL 1369928, at *8 (N.D. Cal. March 26, 2019) (dismissing claim because plaintiff must describe "the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade" and permit defendant "to ascertain at least the boundaries within which the secret lies").

### c. Plaintiffs Fail To Identify the Alleged "Misappropriation"

---

controls." DE 139, ¶¶ 284-85. These allegations, however, are not relevant to trade secret misappropriation; but to Philips' CFAA/DMCA claims, if anything.

[8] It cannot even be ascertained whether the alleged "confidential information" constitutes information that falls within the Court's order dismissing trade secret claims over which it lacks jurisdiction. DE 92 at 24. Philips' obfuscation is fatal.

The Court also should dismiss Philips' trade secret claims because the allegations fail to support that either of the Wheelers "knew of [a specific individual's] unauthorized takings or knew that the information that [the unnamed specific individual] allegedly misappropriated was protected trade secret information." *Agilysys,* 258 F. Supp. 3d at 1345-49 (dismissing GTSA and DTSA claims). That is, because Philips' trade secret claims are based on allegations the defendants received misappropriated trade secrets from former Philips employees, Philips fails to identify those individuals and fails to allege the Wheelers knew such information was misappropriated. *See, e.g., Lamont,* 2019 WL 1369928, at *8 (dismissing claim because "Plaintiff has not shown that [] Defendants wrongfully acquired or disclosed any trade secrets").

### d. The Trade Secret Claims Based on PSMs Should Be Dismissed

The Court granted leave to amend the complaint to bring trade secret claims "to the extent that such claims are *not premised* upon PSMs [*i.e.,* Proprietary Service Materials]." DE 135 at 20 (emphasis added). The Court limited the scope of any new trade secret claims because it does not have jurisdiction to "interpret FDA regulations to determine whether the PSMs are indeed protectable trade secrets or [if they are] AIAT materials." *Id.* at 17. Because Philips' claims purport to

"reassert[], re-allege[], and incorporate by reference the allegations in all other paragraphs," Philips bases its new trade secret claims, at least in part, on the PSMs that the Court lacks jurisdiction to interpret. *See, e.g.*, DE 139, ¶¶ 267, 279, 303. Thus, Counts X, XI, and XIII should be dismissed for encompassing trade secret allegations premised on PSMs, which this Court already has dismissed for lack of jurisdiction. DE 92 at 19-25; *see also* DE 164 (Transtate Defendants' motion).

## V. Plaintiffs' GTSA Claim Independently Fails

The GTSA trade secret claim separately fails because Philips' allegations of personal liability for alleged activities of the *Transtate* defendants are insufficient to state a claim against *the Wheelers*. Count XIII lumps the Wheelers together, and alleges only that "Daniel Wheeler, through the Estate, and Robert A. Wheeler are [] personally liable" for the Transtate defendants' "misappropriation of Philips' trade secrets and therefore have violated state trade secrets acts, including the Georgia Trade Secrets Act." DE 139, ¶ 304. This count should be dismissed for failing to plead personal involvement in a trade secret misappropriation claim under the GTSA. *See, e.g., Kilsheimer v. State,* 251 Ga. 549, 550 (1983) ("A suit against the corporation cannot proceed against its members in their personal capacities unless some persuasive reason is presented for piercing the corporate veil.").

## VI. Plaintiffs' Tortious Interference Claims Fail

The Court should dismiss the tortious interference with contractual relations claims against the Wheelers (Counts VIII and XIX) because: (1) Philips fails to plead the necessary elements, and (2) the claims are preempted.

### a. Plaintiffs' Tortious Interference Claims Against the Wheelers Fail

Phillips' allegations against the Wheelers based on their corporate capacity and irrelevant allegations fail to support a tortious interference claim against them. Specifically, Philips fails to allege "improper action" and other facts to support the required elements of a tortious interference claim.

Tortious interference with contractual relations is an intentional tort that requires, *inter alia*: "improper action or wrongful conduct" where "defendant acted purposely and with malice with the intent to injure." *Walker v. Select Portfolio Servicing, Inc.,* 2017 WL 9516599, at *2 (N.D. Ga. Aug. 11, 2017) (quotation omitted). Philips "must show more than that the defendant simply persuaded a person to break a contract." *Kirkland v. Tamplin,* 645 S.E.2d 653, 656 (Ga. App. 2007); *see also Sommers Co. v. Moore,* 621 S.E.2d 789, 791 (Ga. App. 2005) (same). "Improper actions constitute wrongful conduct in itself . . . that 'generally involve[s] predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted

criminal prosecutions.'" *Disaster Servs., Inc. v. ERC P'ship*, 492 S.E.2d 526, 529 (Ga. App. 1997) (quotation omitted).

Philips alleges the Wheelers in their capacity as "President" (Daniel) or "President" and "Vice-President" (Andy) "oversaw and directly participated in Transtate I and Transtate II's tortious interference with Philips' contractual relations with Former Philips Employees." And like the trade secret allegations, Philips alleges Daniel Wheeler "participated in Transtate's efforts to *conceal* its tortious behavior." DE 139, ¶¶ 373-75 (emphasis added). Philips concludes that "[b]ecause he is an officer of Transtate" and because he "oversaw" and "directly participated in . . . tortious behavior," Daniel Wheeler "is personally liable for [the Transtate defendants'] tortious interference." *Id.*, ¶ 376.

As to Andy Wheeler, Philips alleges he "solicited trade secret, confidential, and/or proprietary Philips material from Former Philips Employees." DE 139, ¶ 383. Philips concludes that "[b]ecause he is an officer" and he "oversaw" and "directly participated in . . . tortious behavior," Andy Wheeler "is personally liable for [the Transtate defendants'] tortious interference with Philips contractual rights pursuant the [sic] IP Agreements with Former Philips Employees." *Id.*, ¶ 376. These allegations fail to state a claim for tortious interference.

*First*, Philips alleges no facts to support the Wheelers (1) "improper action

or wrongful conduct," *Walker,* 2017 WL 9516599, at \*2 (dismissing claim where "allegations of improper/wrongful conduct are conclusory and do not fall within the description of improper action/wrongful conduct previously recognized by Georgia courts"); and (2) "acted purposefully and with malice and with the intent to injure" or "induced a breach of contractual obligations." *Id.*

*Second,* Philips has not attached copies of the allegedly breached contracts or even identified the parties to the alleged contracts, let alone identified specific— allegedly breached—contractual provisions, making it impossible to evaluate the applicability (or enforceability) of such contracts. *See Agilysys,* 258 F. Supp. 3d at 1354 (dismissing claims where plaintiff "failed to allege facts to support the interference with any specific contracts"). In addition, Philips has not alleged either of *the Wheelers* even knew of such alleged contracts (or contractual provisions), making the alleged *intentional* tort based only on speculation. But even if Philips had, it is well-established Philips "must show more than that the defendant simply persuaded a person to break a contract." *Kirkland,* 285 Ga. App. 241 at 244. Thus, Philips' allegations are conclusory, factually unsupported, and the Court should dismiss these claims.

### b. Plaintiffs' Tortious Interference Claims Are Preempted

The Court should independently dismiss the tortious interference claim

against the Wheelers because Philips' GTSA claim preempts it. The GTSA "supersede[s] conflicting tort . . . and other laws of this state providing civil remedies for misappropriation of a trade secret." O.C.G.A. § 10-1-767(a); *see Meyn Am., LLC v. Tarheel Distribs., Inc.,* 36 F. Supp. 3d 1395, 1408-09 (M.D. Ga. 2014) (finding GTSA preemption on motion to dismiss); *Opteum Fin. Servs., LLC v. Spain,* 406 F. Supp. 2d 1378, 1380 (N.D. Ga. 2005) (determining preemption even though issue of whether information qualified as trade secret is disputed and unresolved).

Here, Philips' allegations in support of its tortious interference claims re-hash the allegations made to support its trade secret claims. *Compare* DE 139, ¶¶ 268-75 to ¶¶ 371-77 and ¶¶ 280-87 to ¶¶ 381-87. The GTSA, therefore, preempts the tortious interference claims and they should be dismissed. *See Diamond Power Int'l Inc. v. Davidson,* 540 F. Supp. 2d 1322, 1347 (N.D. Ga. 2007) (finding tortious interference claim superseded by GTSA because plaintiff relied on precisely the same conduct and injury to prove its trade secrets claims).

## CONCLUSION

For the these reasons, the Wheelers ask the Court to dismiss Counts III & IV (CFAA), Counts VII & VIII (DMCA), Count XVs & XVIs (Copyright Act), Counts X-XI (DTSA) & XIII (GTSA), and Counts XVIII & XIX (tortious interference).

Respectfully submitted this 19th day of July, 2019.

25

Lora A. Brzezynski (*pro hac vice motion to be submitted*)
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W.
Suite 1100
Washington, D.C. 20005

David W. Higer (*pro hac vice motion to be submitted*)
DRINKER BIDDLE & REATH LLP
191 N. Wacker Dr., Suite 3700
Chicago, Illinois 60606

Thatcher A. Rahmeier (*pro hac vice motion to be submitted*)
DRINKER BIDDLE & REATH LLP
222 Delaware Ave., Suite 1410
Wilmington, DE 19801

/s/ *John C. Amabile*
John C. Amabile
Georgia Bar No. 014520
PARKER POE ADAMS & BERNSTEIN LLP
1180 Peachtree Street, N.E.
Suite 3300
Atlanta, GA 30309
(678) 690-5747
johnamabile@parkerpoe.com

Charles E. Raynal, IV
Georgia Bar No. 203704
PARKER POE ADAMS & BERNSTEIN LLP
PNC Plaza
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
(919) 828-0564
charlesraynal@parkerpoe.com

*Attorneys for Defendant Robert A. Wheeler, individually and on behalf of the Estate of Daniel Wheeler*

26

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to Local Rules 5.1 and 7.1 D, that the foregoing

brief has been prepared using Book Antiqua, 13 point font.

/s/ John C. Amabile
John C. Amabile
Georgia Bar No. 014520
PARKER POE ADAMS & BERNSTEIN LLP
1180 Peachtree Street, N.E.
Suite 3300
Atlanta, GA 30309
(678) 690-5750
johnamabile@parkerpoe.com

*Attorneys for Defendant Robert A. Wheeler, and
on behalf of the Estate of Daniel Wheeler*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that a true and correct copy of THE WHEELER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT was electronically filed with the Clerk using the CM/ECF system which will automatically send email notification of such filing to all attorneys of record.

This 19th day of July, 2019.

/s/ *John C. Amabile*
John C. Amabile