**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 3:20-CV-021-MOC-DCK**

| | | |
|---|---|---|
| PHILIPS MEDICAL SYSTEMS NEDERLAND B.V., PHILIPS NORTH AMERICA LLC, and PHILIPS INDIA LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **ORDER** |
| TEC HOLDINGS, INC., TRANSTATE EQUIPMENT COMPANY, INC., and ROBERT A. WHEELER, | ) ) ) ) | |
| Defendants. | ) ) ) | |

     **THIS MATTER IS BEFORE THE COURT** on "The Wheeler Defendants' Motion To Compel Plaintiffs' Identification Of Misappropriated Trade Secrets And Related Contentions" (Document No. 285); "Philips' Motion To Compel Deposition Testimony And Expedite Briefing" (Document No. 310); "Philips' Motion For Protective Order" (Document No. 317); "Defendants' Motion To Compel Production Responsive To Defendants' FDA Requests" (Document No. 319); and "Defendants' Motion To Compel Production Of Electronically Stored Information And Source Code And To Modify Protective Order" (Document No. 333).

     These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b), and are ripe for disposition. Having carefully considered the motions and the record, the undersigned will <u>grant</u> the motions in part and <u>deny</u> the motions in part.

## BACKGROUND

     Plaintiffs Philips Medical Systems Nederland B.V., Philips North America LLC, and Philips Electronics India Ltd. (together, "Philips" or "Plaintiffs"), initiated this action on July 28,

2017, with the filing of a "Complaint" (Document No. 1) in the United States District Court for the Northern District of Georgia ("N.D.Ga." or "Georgia Court") against TEC Holdings, Inc ("TEC").

On September 29, 2017, Defendant TEC "filed a "…Motion to Dismiss" (Document No. 13) and a "…Motion To Transfer Venue" (Document No. 14) supported by the "Declaration Of Daniel R. Wheeler" (Document No. 14-1). The motion to transfer sought transfer to this Court. (Document No. 14). Plaintiffs filed a "First Amended Complaint" (Document No. 20) on October 20, 2017. Defendant TEC and Defendant Transtate Equipment Company, Inc. ("Transtate") subsequently filed motions to dismiss the Amended Complaint. (Document Nos. 27 and 34).

The Georgia Court denied the motion to transfer on January 2, 2018; and granted in part and denied in part the motions to dismiss on March 14, 2018. (Document Nos. 39 and 42).

Plaintiffs' "Second Amended Complaint" (Document No. 139) (the "Complaint") was filed on May 23, 2019. Plaintiffs name the following as Defendants in the Second Amended Complaint: TEC Holdings, Inc. ("TEC"), formerly known as Transtate Equipment Company, Inc. ("Transtate I"), Transtate Equipment Company, Inc., formerly known as Transtate Holdings, Inc. ("Transtate II") (collectively, "Transtate"), and Robert A. ("Andy") Wheeler, individually and in his capacity as executor and personal representative of the Estate of Daniel Wheeler ("the Estate") (Andy Wheeler and the Estate are referred to collectively as "the Wheelers" or "Wheeler Defendants"). (Document No. 139).

According to the Complaint, Philips "develops, sells, supports, maintains, and services medical imaging systems, such as X-ray systems used at hospitals and medical centers, including the proprietary hardware and software used to operate, service, and repair such systems." (Document No. 139, p. 2). "Transtate I provided and Transtate II provides maintenance and

support services for certain of such medical systems." (Document No. 139, p. 2). "Several prior employees of Philips North America LLC were previously employed by Transtate I and are currently employed by Transtate II as service specialists, service technicians, or similar positions." Id. Plaintiff's "medical imaging systems include Philips' copyrighted and proprietary intellectual property, and proprietary trade secrets, in the form of, among other things, proprietary software that Philips's technicians can use to service the medical imaging systems." Id. Plaintiff "includes proprietary access controls on the medical imaging systems to restrict access to its proprietary software to authorized individuals." Id.

Plaintiff alleges that: "Transtate I has used, and Transtate II continues to use, misappropriated trade secret information from Philips to circumvent the access controls on Philips' medical imaging systems to gain unauthorized access to proprietary and copyrighted software." (Document No. 139, pp. 2-3). "Transtate I and II have also made unauthorized copies of Philips' standalone service software, circumvented access controls on the standalone software, and made unauthorized use of such software." (Document No. 139, p. 3). "Transtate I and II have also decrypted and made unauthorized copies of Philips' copyrighted service documentation." Id. "Transtate uses its unauthorized access to and copies of Philips' proprietary software and copyrighted documents to unfairly compete against Philips." Id.

Plaintiffs assert claims in the Second Amended Complaint for: (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) violations of the Digital Millennium Copyright Act, 17 U.S.C. § 1201; (3) violations of the Defend Trade Secrets Act, 18 U.S.C.§ 1836; (4) misappropriation of trade secrets; (5) violations of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760, *et seq*.; and (6) copyright infringement, 17 U.S.C. § 101, *et seq*. (Document No. 139, pp. 3, 39-89).

3

Defendants filed motions to dismiss the Second Amended Complaint on June 27, 2019, and July 19, 2019. <u>See</u> (Document Nos. 164 and 167). "Defendant Robert A. ("Andy") Wheeler's Motion To Transfer Venue" (Document No. 208) was filed on October 23, 2019, with Defendant(s) again seeking transfer to this Court. Plaintiffs opposed transfer. <u>See</u> (Document No. 220).

On January 10, 2020, the Georgia Court, with a different presiding judge, issued a decision transferring this case to the Western District of North Carolina. (Document No. 241); <u>see also</u> (Document No. 244). The Georgia Court noted, *inter alia*, that Philips had filed three (3) actions[1] with this Court since Defendant Transtate I's original motion to transfer (Document No. 39). (Document No. 241, p. 4).

This Court held a Status Conference on January 29, 2020, with the Honorable Max O. Cogburn, Jr. presiding. <u>See</u> (Document No. 269). Pursuant to Judge Cogburn's instructions, the parties filed their "Certification And Report Of F.R.C.P. 26(F) Conference And Discovery Plan" (Document No. 268) on February 12, 2020.

In March 2020, Judge Cogburn denied the motions of TEC Holdings, Inc., Transtate Equipment Co. Inc., and the Wheeler Defendants for partial dismissal. (Document Nos. 270 and 271); <u>see also</u> (Document Nos. 164 and 167). The Court then denied multiple discovery-related motions on June 1, 2020. <u>See</u> (Document Nos. 140, 170, 213, and 216). Judge Cogburn also denied "Plaintiffs' Omnibus Motion To Dismiss Defendants' Counterclaims And Strike Affirmative Defenses" (Document No. 280). <u>See</u> (Document No. 305).

---

[1] <u>Philips N. Am. LLC v. Dorow</u>, 3:19-CV-272-MOC-DSC (W.D.N.C. June 11, 2019); <u>Philips Med. Sys. Nederlands B.V. v. TEC Holdings, Inc.</u>, 3:19-CV-373-MOC-DCK (W.D.N.C. July 30, 2019); and <u>Philips N. Am. LLC v. Zimmerman</u>, No. 3:19-CV-444-MOC-DSC (W.D.N.C. Sept. 10, 2019). <u>See also</u> <u>Zimmerman v. Philips N. Am. LLC</u>, 3:20-MC-141-MOC-DCK (W.D.N.C. Sept. 8, 2020).

4

The Court entered its "Pretrial Order And Case Management Plan" (Document No. 279) on June 4, 2020. The case deadlines have since been revised and are currently scheduled as follows: fact discovery completion – May 14, 2021; expert discovery completion – July 16, 2021; mediation report – July 23, 2021; ready date for trial – October 18, 2021. See (Document No. 339).

Now pending are renewed motions for orders compelling (or seeking protection from) certain discovery requests: "The Wheeler Defendants' Motion To Compel Plaintiffs' Identification Of Misappropriated Trade Secrets And Related Contentions" (Document No. 285); "Philips' Motion To Compel Deposition Testimony And Expedite Briefing" (Document No. 310); "Philips' Motion For Protective Order" (Document No. 317); "Defendants' Motion To Compel Production Responsive To Defendants' FDA Requests" (Document No. 319); and "Defendants' Motion To Compel Production Of Electronically Stored Information And Source Code And To Modify Protective Order" (Document No. 333).

The undersigned initially attempted to resolve discovery issues between the parties through an informal telephone conference on July 1, 2020. After that effort failed, the parties were directed to file appropriate motions. The undersigned observes that over the two and a half (2 ½) years this matter was pending before the Georgia Court it was presided over by three (3) different judges who dealt with the parties' multiple discovery disputes, including by conducting telephone conferences to address such disputes. See (Document Nos. 93, 129, 206).

The pending motions are now ripe for review and disposition.

**STANDARD OF REVIEW**

Rule 26 of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

5

proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

## DISCUSSION

**A**. **"The Wheeler Defendants' Motion To Compel . . . " (Document No. 285)**

By the pending motion, the Wheeler Defendants seek to compel Plaintiffs to:

> (1) respond to Interrogatory No. 1 to identify with particularity each alleged trade secret that it contends was misappropriated on an individual-by-individual basis, including a description of each allegedly misappropriated trade secret sufficient to separate the alleged trade secret from what is generally known in the field; (2) respond to Interrogatories Nos. 3-5 to adequately identify the circumstances of the alleged misappropriation of the identified trade secrets and to allow Defendants to discover Philips' attempts to protect the allegedly misappropriated trade secrets; and (3) re-designate Philips' responses to these interrogatories as "Confidential," including any Philips-produced documents incorporated therein.

(Document No. 285, p. 2); see also (Document No. 285-1).

6

According to the Wheeler Defendants, "Philips has failed to identify with sufficient particularity the alleged trade secrets at issue in this case." (Document No. 292, p. 2). The Wheeler Defendants summarize their argument for compelling more complete responses as follows:

> As a legal matter, black letter law establishes that Philips must identify—*with sufficient particularity*—the basis for its alleged trade secret claims. *Lwin Family Co. v. Aung Min Tun*, No. 3:11CV569, 2012 WL 11922875, at *1 (W.D.N.C. Oct. 11, 2012). As a matter of practicality, only Philips knows what information Philips subjectively considers a "trade secret" and that it contends the defendants misappropriated. It is only fair—indeed, fundamental—that Philips *finally* identify and describe in adequate detail this information in its possession, which will enable the parties—and the Court—to efficiently proceed with the discovery remaining and allow the Wheeler Defendants to prepare their defenses and avoid trial by ambush.

Id. Defendants later emphasize that they "do **not** seek the identification of everything Phillips contends is a trade secret in its business, but merely the subset **that Phillips contends has been misappropriated and is at issue in this case**…." (Document No. 92, p. 5).

In addition, the Wheeler Defendants argue that Plaintiffs have "improperly designated its interrogatory responses as 'Attorneys' Eyes Only' ("AEO")" under the "Protective Order" (Document No. 63). (Document No. 92, p. 2). They contend that this designation further prejudices their "ability to prepare a proper defense, including conferring with defendant Andy Wheeler and the other individuals accused of misappropriation and knowledgeable about the industry."

### 1. Interrogatory No. 1 – Allegedly Misappropriated Trade Secrets

The Wheeler Defendants' Interrogatory No. 1 requests that Plaintiffs:

> Identify and describe in detail all Trade Secrets that Plaintiffs allege or contend any Defendant misappropriated or used without consent, including but not limited to (1) in the development or use of the "exploit software"/"software exploit" (see, e.g., Complaint, ¶ 59) and "circumvention mechanism" (see, e.g., Complaint, ¶ 72), (2) to

7

gain access to and create copies of Philips' log files; (3) Philips'
documents and the "trade secrets . . . expressed in such documents"
Complaint, ¶ 82); (4) any other "Exploit Mechanisms" (Complaint,
¶ 85); and (5) any "trade secrets" from "Former Philips Employees"
(see, e.g., Complaint, ¶¶ 92, 127).

(Document No. 292-1, p. 3).

The Wheeler Defendants assert that Plaintiffs have identified their "alleged trade secrets

by vague, generic descriptors, by document categories encompassing thousands of documents and

by pointing to 'thousands of pages and gigabytes of data.'" (Document No. 292, p. 11).

> The law requires Philips to identify its trade secrets with
> particularity for the Defendants to understand (1) "exactly what they
> are alleged to have done," *Lwin Family*, 2012 WL 11922875 at *1;
> and (2) to "separate [the alleged trade secrets] from 'matters of
> general knowledge in the trade or of special knowledge of those
> skilled in the trade,'" *Silicon Knights*, 2008 WL 2414046 at *8
> (quoting *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–
> 65 (7th Cir. 1998)). Philips' responses to Defendants'
> interrogatories do neither, and instead improperly shift the burden
> to the Wheelers to perform the impossible task of deciphering
> Philips' contentions by improper reliance on Rule 33(d).

Id.

Defendants further assert that "it is critical for Philips to provide specific identification of

alleged trade secret 'information' within any document it contends is at issue so Defendants can

reasonably investigate and rebut Philips' contentions with evidence, including testimony from

Philips itself." (Document No. 292, p. 15) (citing Structural Pres. Sys. V. Andrews, 2013 WL

12244886, at *6 (D.Md. Dec. 17, 2004)). The Wheeler Defendants add that bare identification of

software tools or databases is inadequate – "Philips is required to provide a description of the

alleged trade secret sufficient to separate it from knowledge and processes known in the field."

(Document No. 292, pp. 16-17).

Finally, Defendants suggest that Plaintiffs are improperly using Fed.R.Civ.P. 33(d) to avoid identifying their trade secrets. (Document No. 292, p. 17). Defendants acknowledge that in some instances, parties may answer interrogatories with "business records," but argue that such a response is not appropriate here because the "burden of deriving the answer from the documents is [not] equal among the parties." Id. Defendants note that "unlike patent or copyright litigation, there is no government-registered document disclosing the intellectual property at issue in a trade secret case." Id.

In response, Plaintiffs argue that they have identified their "contentions with sufficient particularity" and that "Wheeler knows what trade secrets are at issue in this litigation, even if he disputes whether such information constitutes trade secrets. No further identification is required." (Document No. 301, p. 2). Plaintiffs acknowledge that they "must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating." (Document No. 301, p. 8) (quoting Olympus Managed Health Care, Inc. v. Am. Housecall Physicians, Inc., 853 F.Supp.2d 599, 572 (W.D.N.C. 2012)).

Plaintiffs then assert that their response to Interrogatory No. 1 includes "sufficient detail to inform defendants of what they are accused of misappropriating and to allow them to mount a defense." Id. (citing Document No. 286-1, pp. 2-12). They further assert that they have complied with their "discovery obligation by describing discrete *categories* of information" and "identifying for defendants *documents* produced by defendants to Philips that Philips contends evidence misappropriation of its trade secrets." (Document No. 301, p. 9) (citing Bridgetree Inc. v. Red F. Marketing LLC, 2013 WL 443698, at *4 (W.D.N.C. Feb. 5, 2013)) (emphasis added). Plaintiffs also assert that their incorporation of responses provided to Transtate's Interrogatories satisfies their burden to respond to the Wheeler Defendants. (Document No. 301, pp. 9-10).

9

Philips Plaintiffs contend, *inter alia*, that they do not need to identify portions of documents to satisfy their burden of production because "the entire documents it identifies are trade secrets misappropriated by defendants." (Document No. 301, p. 14). Plaintiffs assert that "documents and software categorically" are entitled to trade secret protection. (Document No. 301, pp. 15-16).

In reply, the Wheeler Defendants argue that it is "insufficient for Philips to merely identify categories of information and types of documents." (Document No. 302, pp. 4-5). Defendants argue that documents and software are not themselves trade secrets. (Document No. 302, pp. 10-13) (citations omitted). Defendants persuasively argue that Philips Plaintiffs must identify *what information* within each document and category is a misappropriated trade secret, and where the information appears in the documents. (Document No. 302, p. 11).

The undersigned has carefully considered the parties' arguments, and reviewed Plaintiffs' response to Interrogatory No. 1. See (Document No. 286-1, pp. 2-12). In short, the undersigned finds the Wheeler Defendants' arguments more persuasive. Contrary to Plaintiffs' arguments, and acknowledging the parties are far more familiar with the facts and underlying technology than the Court, the undersigned does not find that Plaintiffs' response provides sufficient detail to inform Defendants (or a finder of fact) of what Defendants are accused of misappropriating and to mount a defense. At least in this case, identifying categories of information and thousands of pages of documents, without more explanation, does not seem to be sufficient.

Plaintiffs' responses to Interrogatory No. 1 commit to supplementing in accordance with Fed.R.Civ.P. 26(e). See (Document No. 286-1, p. 13). The undersigned finds that a robust supplementation is long over-due. Such supplementation should begin with counsel for the parties conferring at length about the details of such production, including what kind of additional descriptions are needed and whether "incorporating" other responses is appropriate and helpful.

Moreover, it seems that counsel and/or the parties need to focus on what information Defendants had appropriate access to, and then more specifically identify the information that was misappropriated. At least with opposing counsel, named parties, and certain other individuals, Plaintiffs need to be more explicit and precise about the alleged wrongdoing.

As noted above, "[t]he rules of discovery are to be accorded broad and liberal construction." The undersigned expects counsel to work diligently and swiftly to clarify the information Defendants have allegedly misappropriated – the admissibility of such information will be a question for another day.

### 2. Interrogatory Nos. 3-5 – Supplementation

Next, Defendants contend that supplementation of Interrogatory Nos. 3-5 will be appropriate after supplementation of Interrogatory No. 1, and that it is necessary to identify the circumstances of the alleged misappropriation and to understand Plaintiffs' attempts to protect the allegedly misappropriated trade secrets. (Document No. 292, p. 23).

In response, Plaintiffs conclude that Defendants' only criticism of Philips' responses to Interrogatory Nos. 3-5 is that they will require supplementation if/when Interrogatory No. 1 is supplemented. (Document No. 301, p. 16). Plaintiffs agree to "timely supplement its interrogatory responses in accordance with its obligations under the federal and local rules and this Court's orders." Id.

According to Defendants,

> Philips must supplement its responses to Interrogatory Nos. 3-5 to address for all contentions the specific alleged instances of misappropriation or use of the particular trade secret *information* (No. 3), *all* persons who have or have had rights or access to the particular trade secret *information* (No. 4), and Philips' efforts to maintain secrecy of the particular trade secret *information* (No. 5).

(Document No. 302, p. 15).

The undersigned finds that Plaintiffs should supplement their responses to Interrogatory Nos. 3-5, after supplementing responses to Interrogatory No. 1 <u>and</u> conferring with Defendants' counsel.

### 3. Designation of Discovery Responses

The Wheeler Defendants' motion to compel also seeks to have Plaintiffs re-designate their supplemental discovery responses. (Document No. 292, pp.23-26). Defendants note that the entirety of the supplemental discovery responses are currently designated "Confidential-Attorneys Eyes Only" and such designation has prevented "Defendants' counsel from sharing the responses with their clients who are accused of misappropriating the very information Philips will not now permit them to see again during discovery." (Document No. 292, p. 23); <u>see also</u> (Document No. 286-1).

According to Defendants:

> Philips has not established good cause for an Attorneys' Eyes Only designation. In order for Philips to have any basis for making its trade secret misappropriation allegations, the implicated individuals necessarily must have seen the allegedly AEO materials already—this includes named defendant Andy Wheeler who will be present for the entire trial, as well as the other individuals named in the interrogatory responses. *See* **Ex. B** at 11 ("*e.g.,* Dorow, Peterson, Griswold, Zimmerman, Little"); *id.* at 57 ("By way of further response, Philips identifies Dale Dorow, William Griswold, Darryl Dancy, Charles Peterson, Robert David Rendfeld, James M. Froman, Robert J. Bostdorf, and Scott Dow as the Former Philips Employees whom Plaintiffs are presently aware and from whom Defendants have obtained Philips' trade secrets and confidential or proprietary information"). Thus, there can be no undue harm from these individuals seeing the materials again and understanding Philips' contentions against them. Defendants do not object to the responses and any referenced document being re-designated "Confidential," which would still protect the information but permit the disclosure the Wheelers and other defendants must have to fairly defend against the allegations against them.

(Document No. 292, p. 25).

Plaintiffs' response notes that it has "already provided Defendants with a redacted copy of its interrogatory responses that does not redact any information from Philips' response to Interrogatory No. 1 and offered to allow defendants to share it with Wheeler, Dorow G[r]iswold, and Zimmerman if defendants agreed to the reasonable terms." (Document No. 294-1, p. 17) (citing Document No. 295-2, pp. 3-4).

In reply, the Wheeler Defendants ask the Court to re-designate Philips' responses to Transtate Interrogatories as "Confidential," and to direct that Philips' redaction of "its parenthetical *contentions*" be removed. (Document No. 302, pp. 15-16).

It appears to the undersigned that the parties have made some progress (as of August 2020) on this issue. The undersigned is persuaded that Attorneys' Eyes Only designation has been overused and encourages Plaintiffs to continue to redact and/or re-designate its discovery production so that Defendants' counsel can include their clients and certain other individuals in its review. The Court expects counsel to continue to work in good faith to make appropriate designations.

**B**. "**Philips' Motion To Compel Deposition Testimony . . . " (Document No. 310)**

Plaintiffs' "… Motion To Compel Deposition Testimony And Expedite Briefing" seeks to compel Defendants to participate in depositions without delay, including Dale Dorow, Bill Griswold, and Andy Wheeler. (Document No. 310); see also (Document No. 311). Plaintiffs argue that Defendants are flouting the Scheduling Order and that delay threatens the parties' ability to complete discovery by Court-imposed deadlines. Id.

"Defendants' Response In Opposition…" argues that this motion is "both premature and unwarranted." (Document No. 315, p. 1). Defendants contend that Plaintiffs failed to meet-and-confer before raising this issue with the Court and filing the instant motion. Id. Moreover,

13

Defendants assert that they have not prevented Plaintiffs from taking depositions, but that they have raised discovery concerns they believe should be addressed along with scheduling depositions.  Id.

"Plaintiffs' Reply…" notes that methods of discovery may be used in any sequence and discovery by one party does not require any other party to delay its discovery.  (Document No. 316, p. 1) (quoting Fed.R.Civ.P. 26(d)(3)).  Plaintiffs contend that Defendants have now avoided depositions for more than two years.  (Document No. 316, p. 5).

Unlike the first motion discussed above, the issue here seems fairly simple and clear cut. The parties' failure to confer and work out an appropriate deposition schedule is disappointing, but there does not seem to be any meaningful dispute that these depositions should proceed.

The motion will be granted, and the parties are directed to immediately schedule the Dorow, Griswold, and Wheeler depositions if they have not already been conducted or scheduled. In fact, with the revised discovery deadline approaching in May, counsel should promptly schedule any remaining depositions they think are necessary.

## C.  "**Philips' Motion For Protective Order**" (**Document No. 317**)

By the instant motion, Plaintiffs seek "a protective order that forbids discovery relating to 21 C.F.R. § 1020.30(g) (the "FDA Regulation, or, when referenced by Defendants, the "AIAT Regulation")."[2]  (Document No. 317, p. 1).  Plaintiffs assert that a protective order is required because "Defendants have taken contradictory and confusing positions on whether or not they seek to litigate Philips compliance with the FDA Regulation."  Id.  Plaintiffs contend that Defendants' counterclaims allege Philips has violated its disclosure obligations, but argue that the FDA has

---

[2]  The Second Amended Complaint notes that "Philips provides tools to allow performance **of assembly, installation, adjustment, and testing** ("AIAT") services on Philips Systems . . . Philips provides an AIAT access level to allow customers or third-party service providers of their choosing to access tools to perform AIAT services."  (Document No. 139, p. 10) (emphasis added).

14

exclusive authority to determine if a manufacturer has violated the FDA Regulation. (Document No. 317, pp. 1-2). According to Philips, although Defendants have disclaimed reliance on the FDA Regulation, they persist in dozens of discovery requests that directly relate to the FDA Regulation. (Document No. 317, p. 2).

Plaintiffs go on to argue that discovery related to the FDA Regulation is "irrelevant background." (Document No. 318, p. 11) (citing Fed.R.Civ.P. 26). In the alternative, they argue that inquiry into the FDA Regulations is barred as a matter of law. (Document No. 318, p. 13).

"Defendants' Joint Response In Opposition…" notes that "the Court has already considered and rejected the exact argument in Philips' motion to dismiss that it now re-deploys as a protective order dispute." (Document No. 323, p. 1). In addition, Defendants aver that the "Court need not interpret or apply the FDA Regulation, because, at a minimum, what Philips deems, or has deemed in the past, to be AIAT material – rightly or wrongly – and how it has behaved regarding that material is relevant to all parties claims and defenses." (Document No. 320, p. 2).

> Further, Philips' conflation of specific AIAT-related issues with FDA discovery, generally, should be rejected. Just because Defendants seek FDA-related discovery, which *includes* matters related to the AIAT Regulation, does not mean that Defendants are seeking to enforce the AIAT Regulation. Nor does it make "irrelevant," the FDA-related discovery Defendants seek in support of their defenses and counterclaims.

(Document No. 323, pp. 3-4).

Plaintiffs filed a "… Notice Of Intent Not To Reply…" citing reliance on its motion and memorandum, as well as the "…Memorandum Of Law In Opposition To Defendant's Motion To Compel" (Document No. 325).

Even accepting that Plaintiffs are correct that only the FDA is empowered by Congress to interpret or enforce the FDA Regulation, the undersigned is still not persuaded that a party should be forbidden from conducting discovery that relates to the FDA Regulation and AIAT. Moreover,

15

Plaintiffs sought to dismiss or strike counterclaims or affirmative defenses related to the FDA Regulation and/or AIAT and Judge Cogburn specifically acknowledged such arguments and *denied* Plaintiffs' motion to dismiss – pending further development of the record. See (Document Nos. 280 and 305).

Despite Judge Cogburn's position that there should be further development of the record on these issues, Plaintiffs sought protection from that requirement just a few weeks after the Court's ruling. The undersigned will respectfully decline to allow a protective order that would likely thwart the very discovery the presiding district judge seems to expect to be conducted here. In addition, broadly and liberally construing the parties' discovery obligations, it appears that the information Defendants seek is discoverable. See Fed.R.Civ.P. 26(b)(1).

Based on the foregoing, the undersigned will deny Plaintiffs' motion for protective order.

**D**. **"Defendants' Motion To Compel Production . . ." (Document No. 319)**

This "…Motion To Compel Production Responsive To Defendants' FDA Requests" and the previous "…Motion For Protective Order" were both filed on September 29, 2020, and address the same issue. See (Document Nos. 317 and 319). Defendants contend that the information they seek by this motion is "fundamental information that Defendants need to defend against Plaintiffs' claims and prosecute their counterclaims." (Document No. 319-1, p. 5). By way of example, Defendants assert that they have requested production of communications and documents between Philips and the FDA "because any information Philips has disclosed to a governmental entity is not eligible for trade secret protection." Id.

Defendants summarize the information they seek to compel as falling in two main categories: "(1) materials related to the classification of information necessary for the repair and maintenance of Philips manufactured medical imaging systems, and (2) materials related to

16

interactions and communications with the FDA and other third-parties related to the repair and maintenance of Philips-manufactured medical imaging systems." (Document No. 320, p. 11).

In response, Plaintiffs argue, *inter alia*, that any legitimate discovery in the scope of these requests has already been produced, and therefore, the motion to compel is moot. (Document No. 325, p. 4).

Having considered the arguments by both sides, in both these related motions, as well as Judge Cogburn's decision cited above, the undersigned will grant this motion to compel for the same reasons the undersigned will deny Plaintiff's foregoing motion for protective order. The undersigned is skeptical that all Defendants' requests have been mooted – but to the extent Plaintiffs have already provided responses to the discovery Defendants seek to compel they shall review whether further supplementation is appropriate.

**E**. **"Defendants' Motion To Compel Production . . ." (Document No. 333)**

Defendants also seek to compel production of electronically stored information and source code and to modify the governing Protective Order. (Document No. 333). Specifically, Defendants seek to move to compel Plaintiffs:

> [(a)] to produce electronically stored information ("ESI") for all custodians and search terms as set forth in Exhibit A; (b) to produce all of Philip's source code in a usable form for all software put at issue in the Second Amended Complaint; (c) to install a certain software review tool, VeraCrypt, on the computer used to review Philips' source code, as requested by Defendants' expert; and (d) to modify the Protective Order governing production and review of the parties' source code (DE 63), as set for in Exhibit B ,to allow for the remote review of the parties' source code due to the ongoing restrictions and complications from the COVID-19 pandemic.

(Document No. 333, pp. 1-2).

**1. Electronically Stored Information ("ESI")**

17

Regarding ESI, Defendants note that the parties previously negotiated a jointly proposed e-discovery order that was entered by the Georgia Court on August 1, 2018. (Document No. 34, p. 4) (citing Document No. 64). Defendants further note that since that initial ESI negotiation and production, the Second Amended Complaint, related later-filed cases involving Transtate employees, *and* Defendants' responsive pleadings have all been filed and "significantly expanded the scope of the dispute." (Document No. 34, p. 5).

Apparently, after some back-and-forth, Plaintiffs proposed that each side add five (5) (and then later 6) new ESI custodians and Defendants sought to add 16 new custodians for Plaintiffs. (Document No. 334, pp. 6-8); see also (Document No. 333-1).

In response to this motion to compel, Plaintiffs state that the parties "agree that this case warrants some amount of additional ESI searching and production but disagree about the scope of this additional discovery." (Document No. 335, p. 11). However, Plaintiffs contend that Defendants seek irrelevant and cumulative discovery. (Document No. 335, pp. 14-15).

The parties' failure to resolve this issue is again disappointing. To break this impasse, the undersigned directs that Defendants shall choose **one (1)** more custodian from each category of search terms in "Defendants' ESI Counter-Offer" (Document No. 33-1, pp. 3-5) for Plaintiffs to collect and search ESI. That should result in 12 "new" custodians, plus the 14 originally agreed upon, for a total of twenty-six (26) ESI custodians from whom Plaintiffs shall collect and search ESI. Counsel for the parties shall confer and attempt to narrow the ESI search to avoid duplication and make it as efficient as practicable.

### 2. Philips Source Code

Next, Defendants seek to compel the production of source code for all of at least 147 versions of Phillips software. (Document No. 3334, p. 18). Defendants contend that their expert

"needs to review all versions of the relevant sourced code for all the systems and programs Philips claims are at issue." Id. Defendants also request that the source code be provided "in the format it is ordinarily maintained or in a reasonably usable form." (Document No. 334, p. 23) (citing Fed. R.Civ.P. 34).

Plaintiffs argue that Defendants' demand for more source code to determine whether it is identical from version to version "far exceeds the possible relevance of minor differences between versions." (Document No. 335, p. 20). Plaintiffs acknowledge that "[s]ome source code is relevant to Philips copyright claims" and state that they have "made available *each registered version*." (Document No. 335, p. 21). Philips has "made code available for inspection for versions of its x-ray, CT, and MR software," but argue that it would be "disproportionate to the needs of the case to require Philips to collect many more source code versions with marginal differences and relevance." Id.

Regarding the format, Philips Plaintiffs explain that:

> Defendants accuse Plaintiffs of flouting the Protective Order and Rule 34 as to the form of Philips' source code, but Philips produced its code in the form Philips maintains it for its copyright registrations. (Dkt. 334 at 22.) The protective order requires that the code be "made available … in a format allowing it to be reasonably reviewed and searched." Rule 34 requires that it be produced "in a form … in which it is ordinarily maintained." Plaintiffs made the source code for its copyright registrations available for inspection in the format that it was created and preserved by Plaintiffs for those registrations (and also numerous versions in an additional developer file format). (*See* Ex. W, Circular 61 at 3 (describing deposit requirements for source code).) This is plainly a format that allows for reasonable review. Defendants' own expert's declaration confirms as much, but he complains that is not in the format he would prefer or that would make his analysis most efficient. (Dkt. 334-7, ¶ 10.) Philips was transparent with Defendants about the format of the code it was making available for inspection and Defendants could have raised any concerns they had *before* Philips collected the code and made it available for inspection.

19

(Document No. 335, pp. 21-22).

In reply, Defendants argue that they "must be able to review the source code for all this software to test the veracity of Philips' claims." (Document No. 336, p. 11). Defendants contend that it is according to Plaintiffs that 147 versions of software are at issue here. (Document No. 336, pp. 11-12). Defendants add that *if* it is now Plaintiffs' "position that there is a more limited number of software versions at issue in this case" – they should say so. Id.

Defendants further state that they "have no way of testing the veracity" of Plaintiffs' claims that there are only minor differences in the software because "such comparison requires that Philips make the various versions available in a reasonably usable format." (Document No. 336, p. 12).

The undersigned finds that counsel must confer and renew their efforts reach a compromise on this issue of production of source code of differing versions of software. To begin, it seems Plaintiffs need to clarify and support their position on how many versions are at issue. If, as Plaintiffs' suggest, there are only minor differences between the versions, Plaintiffs' counsel needs to demonstrate that to Defendants, or increase its production.

The undersigned respectfully directs that appropriate counsel and expert(s) for each side convene a virtual meeting to find a compromise resolution of this issue within **ten (10)** days of this Order.

### 3. Software Review Tool

In addition, Defendants expect Plaintiffs "to install 'VeraCrypt' on the source code review. (Document No. 334, p. 25). Defendants contend this is a "standard review tool in these types of inspections." Id.

Plaintiffs' response notes that the parties "agreed to a protocol that allows inspection of source code on a secure computer" and that "Philips inspected Defendants' source code without

storing work product on Defendants' inspection computer." (Document No. 335, p. 23). Plaintiffs contend that their expert has never requested to have Veracrypt or similar software installed on an inspection computer, nor heard of similar requests. Id. Plaintiffs conclude that this request is not reasonable or necessary.

The undersigned agrees with Plaintiffs on this point and will decline to compel the installation of Veracrypt or similar software.

### 4. Protective Order

Finally, Defendants ask the Court to modify the Protective Order to allow for source code inspection via remote means. Due to the COVID pandemic, Defendants suggest that the "source code review machine" should be "delivered to a parties' expert to conduct his or her source code review without having to travel to the producing party's counsel's out of state office." (Document No. 334, p. 26).

Plaintiffs object to such modification. (Document No. 335, pp. 24-25). Plaintiffs opine that "[w]hile the parties need to cooperate to safely litigate during the pandemic, Plaintiffs should not be forced to release their extremely sensitive source code for life-critical medical imaging systems to a third party because Defendants chose to retain a new expert who is far from the inspection computer and unwilling to travel to D.C. or New York." Id.

The undersigned also agrees with Plaintiff on this issue, and will decline to compel modification of the Protective Order to allow source code inspection by remote means. The Court respectfully encourages the parties to take other available precautions to mitigate the risk of exposure during the pandemic and allow their experts to safely review the source code within the existing protocols.

## CONCLUSION

The undersigned regrets the delay in reaching these discovery disputes/motions. Unfortunately, counsel's efforts to compromise and resolve these issues without Court intervention have been underwhelming, and the Court's informal process of conducting a telephonic hearing was not productive. This is a complex matter, and the undersigned has sought to give some guidance to help the parties get discovery to the finish line. Nevertheless, counsel are going to have to work hard and work together to bring this case to a point where it can be settled or resolved on the merits. As advised just over a month ago, the Court expects the parties "to move swiftly to complete any necessary discovery remaining in this case." (Document No. 339, p. 2).

**IT IS, THEREFORE, ORDERED** that "The Wheeler Defendants' Motion To Compel . . . " (Document No. 285) is **GRANTED** as explained herein.

**IT IS FURTHER ORDERED** that "Philips' Motion To Compel Deposition Testimony And Expedite Briefing" (Document No. 310) is **GRANTED**.

**IT IS FURTHER ORDERED** that "Philips' Motion For Protective Order" (Document No. 317) is **DENIED**.

**IT IS FURTHER ORDERED** that "Defendants' Motion To Compel Production Responsive To Defendants' FDA Requests" (Document No. 319) is **GRANTED**.

**IT IS FURTHER ORDERED** that "Defendants' Motion To Compel Production Of Electronically Stored Information And Source Code And To Modify Protective Order" (Document No. 333) is **GRANTED in part and DENIED in part**, as described above.

**IT IS FURTHER ORDERED** that any demands for costs and fees or other sanctions related to the foregoing motions are **DENIED WITHOUT PREJUDICE**.

22

**SO ORDERED**.

Signed: March 31, 2021

David C. Keesler
United States Magistrate Judge